UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| VERNON NORMAN EARLE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:13-CV-184-DLB-REW |
| | ) | |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION[1] |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The United States moved to dismiss Vernon Earle's Complaint or, in the alternative, for summary judgment. DE #53 (Motion). Earle, acting *pro se*,[2] responded. DE #57 (Response). The United States replied. DE #58 (Reply). Earle filed a traverse, essentially a sur-reply. DE #59 (Traverse). The motion stands ripe for review. The Court **RECOMMENDS** that the District Court **GRANT** DE #53 to the extent it seeks summary judgment. Earle fails to support his FTCA negligence case with expert proof as Kentucky law here requires, making summary judgment for the United States appropriate.

---

[1] The Court issues this Recommended Disposition pursuant to the District Judge's referral. DE #18 (Order).
[2] The Court evaluates a complaint by a *pro se* plaintiff under a relatively lenient standard. *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings.").

1

**I.     BACKGROUND**[3]

In September 2013, Earle, a federal prisoner, filed the complaint. DE #1 (Complaint). The District Court initially dismissed the case without prejudice, DE #5, and Earle successfully petitioned for reopening. *See* DE #9. Following service on the United States, the Government answered. DE #17 (Answer). In the subsequent months, the parties engaged in significant motion practice concerning mostly discovery-related matters.

The suit stems from alleged events during Plaintiff's incarceration at USP McCreary. Earle states that he "had a [r]etina detachment and was denied the pr[o]per treatment and care[.]" DE #1, at 3. He says that "unauthorize[d] non[]-medical staff" denied "a schedule[d] surgery to repair his [r]etina[,]" which caused repair complications. *Id.* Particularly, Earle states:

> On December 19, 2011, Plaintiff notify the medical Department that he could not see out of his right Eye, and needed to see the Eye Doctor. It took from December 19, 2011, untill march 8, 2012 for the Defendant to render medical treatment and care. . . . The none medical personnel who cancel plaintiff medically necessary-acute or emergent treatment and care, who is a employee of the united states (defendant") unauthorize action cause plaintiff Eye to deteriate to the point it complicate the normal Retina surgery, causing the plaintiff Emotional Distress, pain and suffering. . . . this action cause the plaintiff to undergo three surgery to correct the Damage done by the long delay in bringing the plaintiff to the surgent to repair the detached Retina.

*Id.* at 4 (spelling, punctuation, and capitalization in original). Earle seeks $2.5 million in damages. *Id.*

The United States filed the instant motion to dismiss and alternatively for summary

---

[3] The Court reviews the complaint in the context of a motion to dismiss and alternatively for summary judgment. Under the standard for a motion to dismiss, the Court construes the complaint in favor of Earle, the non-movant, and assumes the well-pled facts are true. *Gilley v. Dunaway*, 572 F. App'x 303, 305-06 (6th Cir. 2014). Under the summary judgment standard, the Court assesses the facts in favor of Earle, the non-movant. *Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.") (citation and internal quotation marks omitted).

judgment. DE #53. Earle responded, DE #57, the United States replied, DE #58, and Earle filed a traverse, DE #59.[4] The Court has considered the full briefing and record and recommends judgment for the defense.

## II.     STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks removed) (quoting and citing *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 127 S. Ct. at 1965); *see also Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015). The Court must "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). The Court "need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true." *Id.* at 336.

Pursuant to Federal Rule of Civil Procedure 56, a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A reviewing court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co.*, 106 S. Ct. at 1356; *Lindsay v. Yates*, 578 F.3d

---

[4] Earle subsequently filed a letter, DE #60, requesting "a filed copy of said motion/traverse to be mailed to" him. The Clerk **SHALL** mail Earle a copy of DE #59.

407, 414 (6th Cir. 2009). Additionally, the court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The burden of establishing the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact"); *Lindsay*, 578 F.3d at 414 ("The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute."). If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Celotex Corp.*, 106. S. Ct. at 2253; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). The Rule "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.* at 106 S. Ct. at 2552.

If the movant bears the burden of persuasion at trial, "that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial." *Id.* at 2556 (citation omitted) (Brennan, J., dissenting); *see also Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002) (noting that, when the movant also bears the burden of persuasion at trial, the moving party's initial summary judgment burden is "higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it") (citation and internal quotation marks omitted). "If the burden of persuasion at

trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex Corp.*, 106 S. Ct. at 2557 (Brennan, J., dissenting) (emphasis in original).

A fact is "material" if the underlying substantive law identifies that fact, or the element it concerns, as critical. *Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511; *Matsushita Elec. Indus. Co.*, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). Such evidence must be suitable for admission into evidence at trial. *Salt Lick Bancorp. v. FDIC*, 187 F. App'x 428, 444-45 (6th Cir. 2006).

### III. ANALYSIS

*Cause of Action*

First, the Court addresses the nature of the claims Earle makes. He brings a Federal Tort Claims Act (FTCA) case. The Court bases this conclusion on several factors:

(1) Earle says: "Plaintiff files this action pursuant to the FTCA 28 U.S.C. §§ 1346(b), 2401(b) and 2671 et seq." DE #1 (Complaint), at 3. He reaffirms this in the "Jurisdiction" section of the "Verified Complaint." DE #1-1, at 2.

(2) Earle filed a "Verified Complaint" under the "Federal Tort Claim Act for damages and punitive relief pursuant to 28 U.S.C. 1331[.]" *Id.* at 1. He further asserts: "The plaintiff is entitled to bring this action pursuant to the Federal Tort Claim Act as defined in the cited statute herein." *Id.* He makes further assertions "pursuant to the provisions of the Federal Tort Claims Act[.]" *Id.* at 2.

(3) Earle named the United States as Defendant, consistent with FTCA practice.

(4) In a traverse, Earle characterized the complaint as "plaintiff's FTCA complaint." DE #21, at 1. He later again confirmed that this is a "FTCA liable suit." *Id.* at 4; *see also id.* at 6 ("In this complaint, [FTCA suit]" (brackets in original)).

(5) Earle states he brings "the above styled action pursuant to 28 U.S.C. § 1346 (b), 2671 et seq, Federal Tort Claims Act [FTCA]" and acknowledges that "expert witnesses" are "require by kentucky laws governing these type of Actions." DE #24 (Objections) (brackets, capitalization, and syntax in original); *see also* DE ##36 (acknowledging this is an FTCA suit and the need for expert witnesses under Kentucky law), 44 (stating this is an FTCA suit); 45 ("this Federal Tort Claims Act, Lawsuit").

(6) District Judge Bunning's orders, set forth in more detail below, directly determine that Earle brings an FTCA action.

There are two possibly inconsistent presentations. First, Earle initiated the case by using the *pro se* prisoner form "pursuant to the Civil Rights Act, 42 U.S.C. § 1983 or pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388[.]" DE #1, at 1. Reliance on the form Earle chose to define the cause of action is inadvisable here because Earle specifically identified the FTCA as the authorizing statute and because he filed a separate "Verified

Complaint" under the FTCA. Second, Earle does make a reference to the Eighth Amendment and the corresponding deliberate indifference standard in the complaint. *See id.* at 4. This was a single off-hand reference in the complaint, and Earle makes no Eighth Amendment reference in his separate "Verified Complaint." Over the course of the case, Earle occasionally peppered his papers with Eighth Amendment mentions, but he clearly brought the suit under the FTCA. Indeed, some of the references to the deliberate indifference standard appear to be attempts to define or recast the standard of care in this tort case.

Finally, District Judge Bunning conclusively treated this as an FTCA case from the point of screening. *See* DE #4 (Screening Order) ("The Clerk of the Court shall reclassify this Complaint . . . as an action filed pursuant to the Federal Tort Claims Act[.]"); *see also* DE #23 (Order) ("this FTCA suit"; "[t]he FTCA action"). Earle presents a "straightforward FTCA action[.]" DE #29 (Order overruling objections). Judge Bunning later dismissed the relevance of Earle's reference to the Eighth Amendment, stating: "Because this is essentially an allegation of tortious conduct committed by prison personnel, the Court saw fit to reclassify his case as an action filed pursuant to the Federal Tort Claims Act[.]" DE #56 (Order overruling objections), at 2; *see also* DE #4 (Screening Order reclassifying). The District Court characterized this as a "tort action[,]" and directly held: "Earle is incorrect in stating that this is a civil rights action." *Id.* at 3.

For these reasons, the Court finds that the FTCA supplies Earle's cause of action and dictates the analysis.[5]

---

[5] Even if the court interpreted the complaint to raise an Eighth Amendment issue, presumably under *Bivens*, the United States—the only defendant Earle named—cannot be liable under such a claim. *Corr. Servs. Corp. v. Malesko*, 122 S. Ct. 515, 522 (2001) ("The [federal] prisoner may not bring a *Bivens* claim against . . . the United States[.]"). Any such claim thus fails. Earle unquestionably sues only the Government.

*Merits*

Under the FTCA, Earle may sue to recover "money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *see also id.* §§ 2671-2680. As the statute indicates, the law of tort location governs FTCA liability. *Rousey v. United States*, 115 F.3d 394, 396 (6th Cir. 1997). Here, Earle alleges events that happened in Kentucky, at USP McCreary, so Kentucky law determines "plaintiff's substantive claims." *Id.*

Liberally construing Earle's complaint, the Court perceives it to raise medical negligence claims under relevant Kentucky law and cases. *See* DE ##1 (Complaint), 57 (Response), at 4 & 4 n.1 (claiming malpractice and generally asserting breach of a duty of care); *id.* at 5 (identifying common law negligence); *but see id.* at 6 ("This lawsuit is not one for medical malpractice[.]"). The Court has scoured the full record and strained to identify the precise basis for Earle's actual claims. Over the course of the pleadings and other papers, he often intertwines various doctrines and standards.

In Kentucky, "[a] common law negligence claim requires proof of (1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury." *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012). "The standard of care applicable to a common-law negligence action is that of ordinary care—that is, such care as a reasonably prudent person

8

would exercise under the circumstances." *Id.* (internal quotation marks removed).[6] Medical malpractice is essentially a specialized subset of negligence. *Grubbs ex rel. Grubbs v. Barbourville Family Health Ctr., P.S.C.*, 120 S.W.3d 682, 693-94 (Ky. 2003) ("In Kentucky, a medical malpractice action is merely a branch of the well traveled road of common law negligence, and a medical malpractice plaintiff must demonstrate the same prima facie case— consisting of duty, breach, causation, and injury—required in any negligence case." (internal quotation marks, alterations, and footnote removed)); *see also Nalley v. Banis*, 240 S.W.3d 658, 660-61 (Ky. Ct. App. 2007) ("It is well established that in a medical malpractice case, the burden of proof is upon the plaintiff to establish the negligence of a physician by medical or expert testimony.").[7]

In a medical case, "[d]ue to the complexity of medical procedures, proof of these elements, almost always, must take the form of expert testimony." *Doss v. Trover*, No. 2013–CA–000909–MR, 2016 WL 102979, at *4 (Ky. Ct. App. Jan. 8, 2016); *Johnson v. Vaughn*, 370 S.W.2d 591, 596 (Ky. 1963) (explaining a physician's negligence must generally be established by expert medical testimony). The cases express this general requirement for expert testimony differently based on the context. In general, "[p]ursuant to Kentucky law, in most medical malpractice cases, a plaintiff is required to put forth expert medical testimony to establish the applicable standard of care, any breach that occurred and any resulting injury to the plaintiff." *Blankenship v. Collier*, 302 S.W.3d 665, 667 (Ky. 2010). "[O]nly expert testimony can establish

---

[6] Earle makes some mention of negligence *per se* in the papers. *E.g.*, DE #57, at 6. "Negligence *per se* is merely a negligence claim with a statutory standard of care substituted for the common law standard of care." *Young v. Carran*, 289 S.W.3d 586, 588-89 (Ky. Ct. App. 2008) (internal quotation marks removed); *see also* KRS 446.070. Earle makes no actual negligence *per se* claim in the complaint.

[7] The United States here admits that it owed Earle a duty. DE #17 (Answer), at 2.

for the jury the applicable medical standard of care, any breach of that standard, and the resulting injury." *Doss*, 2016 WL 102979, at *4. Additionally, "causation in medical malpractice cases must be established by expert testimony." *Jackson v. Ghayoumi*, 419 S.W.3d 40, 45 (Ky. Ct. App. 2012).

"Except in limited factual circumstances . . . the plaintiff in a medical negligence case is required to present expert testimony that establishes (1) the standard of skill expected of a reasonably competent medical practitioner and (2) that the alleged negligence proximately caused the injury." *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. Ct. App. 2006). "To survive a motion for summary judgment in a medical malpractice case in which a medical expert is required, the plaintiff must produce expert evidence or summary judgment is proper." *Id.*

However,

> Kentucky consistently recognizes two exceptions to the expert witness rule in medical malpractices cases. . . . Both exceptions involve the application of the *res ipsa loquitur* doctrine and permit the inference of negligence even in the absence of expert testimony. . . . One exception involves a situation in which any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care; illustrated by cases where the surgeon leaves a foreign object in the body or removes or injures an inappropriate part of the anatomy. The second occurs when medical experts may provide a sufficient foundation for *res ipsa loquitur* on more complex matters. . . . An example of the second exception would be the case in which the defendant doctor makes admissions of a technical character from which one could infer that he or she acted negligently.

*Id.* at 170-71 (internal quotation marks omitted).

"Medical malpractice cases can therefore be divided into two categories: cases where the parties do not dispute the need for expert testimony, which encompass the vast majority of medical malpractice claims, and cases where the plaintiff disputes the need for expert testimony because he contends one of the narrow exceptions applies." *Blankenship*, 302 S.W.3d at 670.

The "much more common" category of cases is the one where "expert testimony is essential." *Id.* at 671.

Neither exception applies here. Rather, Earle's claims fall squarely within the recognized Kentucky scope of cases requiring expert proof. His failure to provide expert proof at the summary judgment stage is fatal to his case.[8]

The first exception is "a situation in which any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care[.]" *Andrew*, 203 S.W.3d at 170 (internal quotation marks removed). Examples of this exception are when "the surgeon leaves a foreign object in the body or removes or injures an inappropriate part of the anatomy." *Id.* However, for instance, "laypeople do not have sufficient general knowledge to recognize that infection is the result of negligence." *Nalley*, 240 S.W.3d at 661 (internal quotation marks and alterations removed).

Here, Earle's situation is not analogous to *Andrew*'s examples. He essentially asserts that preoperative delay resulted in additional injury to his retina or retina-repair complications.

---

[8] The context is somewhat awkward here because the target of Earle's dissatisfaction seems to be Officer Godberry, who is allegedly the prison employee who stopped Earle from going to a retina-related appointment in February 2012. *See* DE #1-2, at 1. Godberry, the record indicates, is not a doctor and did not provide Earle with medical care. Nevertheless, Earle chose to file this FTCA suit as formulated, and the Court evaluates the claims as presented. The question essentially is whether the United States, through its agents and employees, was negligent in this medical context under the Kentucky standard and therefore liable to Earle under the FTCA. Even if Earle's theory is not particularly malpractice—rather that Godberry unreasonably interfered with his medical appointment—the claim still would require expert proof of causation. Whether any delay exacerbated the problem is not a matter of lay ken. This is so due to the obvious technical aspects of the subject matter—"in most medical negligence cases, proof of causation requires the testimony of an expert witness because the nature of the inquiry is such that jurors are not competent to draw their own conclusions from the evidence without the aid of such expert testimony." *Baylis v. Lourdes Hosp., Inc.*, 805 S.W.2d 122, 124 (Ky. 1991) (footnote omitted) (citing *Jarboe v. Harting*, 397 S.W.2d 775 (1965)). The Court also would note there is no proof Godberry knew the particular medical status Earle faced in early 2012.

Laypeople certainly are not competent, based on common, everyday experience, to judge relative injury causation or delay effect as to a highly complex area of the body such as a retina. Particular cause(s) of retina injury, or retina detachment complication, surely may result from *many* factors that laypeople do not know how to accurately weigh or evaluate absent expert testimony on the subject. *Cf., e.g.*, *Andrew*, 203 S.W.3d at 171 ("[W]e do not believe that the average layperson possesses the knowledge or experience to know if puncture wounds are possible during a skin prick test in the absence of negligence. Nor do we believe that the average layperson knows of the appropriate manner in which to conduct a passive range of motion exam on a person with Pamela's spinal condition and other pre-existing injuries."); *Jackson*, 419 S.W.3d at 45 ("[W]ithout a causation expert to testify that the electrical stimulation could likely have caused the miscarriage, all other issues are moot. A jury would be required to speculate as to causation in this case[.]"). Delay-based allegations (as to alleged harm from interruption of treatment for an already injured eye) are fundamentally different from a surgeon leaving a foreign object in a person or operating on the wrong part of the body, both examples that *Andrew* considered prototypical *res ipsa loquitur* illustrations. *Jones v. Gaes*, No. 2009-SC-780-DG, 2011 WL 1642225, at *3 (Ky. Apr. 21, 2011) ("Absent expert testimony, a layperson is not competent to determine whether the alleged delay by Dr. Jones in recognizing and treating Gaes's perforated colon was the proximate cause of her pain and suffering, the colostomy procedure, or her ongoing medical problems.").[9]

---

[9] Indeed, here, a layperson has already determined, within the administrative process, that "[t]here is no indication that your condition worsened due to the delay in your procedure." DE #1-2, at 6 (Watts Response).

Earle's attachment of and citation to BOP Program Statement P6031.01, *see* DE #57-1, does not do the work he claims. The document does list "detached retina, sudden loss of vision" under the "Medically Necessary – Acute or Emergent" category of care. *Id.* at 3-4. This distinctly

The medical records in this case confirm the complexity of the retina proceeding and also reveal a relevant history of cataracts and a family history of glaucoma, diabetes, retinal detachment, and blindness or other eye disease. DE #42 (Sealed medical records). The records show a pattern of regular and competent medical care from 2012 to 2014 and that Earle's eye presented a complicated problem. *Id.*; *e.g.*, *id.* at 7 ("complex retinal detachment"). The records by no means establish that delay worsened the detachment. *E.g.*, *id.* at 8 (noting "the chronic nature of his macula-off detachment"); *id.* at 10 (post-surgery, "Retinal detachment looks great!"); *id.* at 12 (noting a "history of retinal detachment" and "[r]ecurrent rhegmatogenous retinal detachment"). In September 2014, Dr. Kitchens concluded: "At this point, I think Vernon's retina is stable and it is miraculous he sees as well as he does." *Id.* at 33. The records show medical providers diligently addressing Earle's problem over the course of years, but in no way textually link his retina issue with February 2012 preoperative delay. There is nothing from the records or case that, absent an interpreting and opining expert, establishes the key causation element.

The second exception is "when medical experts may provide a sufficient foundation for *res ipsa loquitur* on more complex matters[.]" *Andrew*, 203 S.W.3d at 170 (internal quotation marks removed). When "no medical testimony [i]s taken, the second exception does not apply[.]" *Green v. Owensboro Med. Health Sys., Inc.*, 231 S.W.3d 781, 784 (Ky. Ct. App. 2007). Indeed, an example of this exception is when "the defendant doctor makes admissions of a

---

generalized document—not specific to Earle's case—simply does not speak to Earle's core tortious allegations. It does not establish a particular standard of care, breach, causation, or injury. Further, Earle did receive attention and treatment at the institution. Inclusion of a malady in this broad policy does not mean that each day of delay in a required surgery creates a triable jury question on harm from delay. Judge Bunning already expressly warned Earle, and held, that the prison policy alone would be inadequate to establish causation. DE #56, at 3-4.

13

technical character from which one could infer that he or she acted negligently." *Andrew*, 203 S.W.3d at 171. Here, Earle presents nothing of the sort. There are no medical experts to provide a foundation for *res ipsa loquitur*, and there are no admissions from involved doctors in the record. Earle took no medical testimony. The second exception is plainly inapplicable on this record.

Because neither exception applies, application of the Kentucky cases generally requiring expert proof mandates recommending summary judgment for the United States. The law is straightforward: "a plaintiff bringing a typical medical malpractice case is required by law to put forth expert testimony to inform the jury of the applicable medical standard of care, any breach of that standard and the resulting injury." *Blankenship*, 302 S.W.3d at 675. Additionally, "causation in medical malpractice cases must be established by expert testimony." *Jackson*, 419 S.W.3d at 45. Earle brings a claim squarely in line with Kentucky's conception of a medical negligence case, and certainly such a case as to the causation component. *See, e.g.*, *Matthews v. Robinson*, 52 F. App'x 808, 810 (6th Cir. 2002) (applying Kentucky law and dismissing FTCA suit for lack of expert testimony).[10] Because Earle fails to put forward required expert testimony on the elements of his claim, summary judgment is proper.[11]

Regarding Earle's timing- and discovery-based complaints, *see, e.g.*, DE ##57 (Response), at 4; 59 (Traverse), at 3-4, "no separate ruling stating the obvious—the need for an

---

[10] In the record, Earle repeatedly acknowledges the need for expert testimony under Kentucky law. DE ##24 (Objection), at 2; 36 (Objection), at 3-4 (citing cases); 45 (Objection), at 1. During discovery, Earle aggressively sought to compel Drs. Kitchens and/or Stone to serve as experts in this case. The Court denied the effort, DE ##30, at 2 & 2 n.2 (citing cases); 49, and the District Court affirmed after Earle objected, DE #56.

[11] This favorably compares to the law under the 8th Amendment regarding alleged delay effects and the requirement of expert proof. *See Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). Thus, again, even if framed as an 8th Amendment case, the conclusion would be the same.

expert witness—was required before the court ruled on the defendant['s] summary judgment motion[]." *Blankenship*, 302 S.W.3d at 669.[12] Regardless, the Court here ordered that the parties complete *all* discovery by September 11, 2015. Expert disclosure is typically part of discovery. *See* Fed. R. Civ. P. 26(b)(4); 26(e)(2). Earle contends he has an expert (Dr. Baranano) to meet the Government's argument. Even if he had no duty to disclose Baranano previously (a point not here decided),[13] Earle surely must have shown his cards in the summary judgment briefing. The United States decried the lack of proof. To answer, Earle cannot just claim an expert; he must demonstrate the proof from that expert that will bridge the noted gap on causation. This he has not done. Indeed, the United States reports that Dr. Baranano's office had no records under Earle's name or date of birth. DE #58, at 2 n.1. The Court thus, under the Kentucky standard, recommends granting summary judgment "based on an actual failure of proof due to a complete lack of expert testimony," not Earle's failure to make a timely disclosure. *Love v. Walker*, 423 S.W.3d 751, 756 (Ky. 2014). Earle makes the bare, unsupported assertion that he has retained Dr. Baranano as an expert, but he has submitted no evidence of this and certainly has not

---

[12] *Blankenship* is clear that, if Plaintiff *does* dispute the need for expert proof, he must have "a reasonable basis to do so" to prevent summary judgment entry prior to giving him the opportunity to present such proof. 302 S.W.3d at 672. Plainly this case requires expert proof; it is unreasonable, on these facts, as in *Blankenship*, to argue that an expert is not needed. Indeed, Earle sought expert proof persistently during discovery, indicating his awareness of the need for same. *See, e.g.*, DE ##46 (admitting, for example, "[t]here is no thing in the report that point to the cause of this Hypotony or chorodial detachment" and generally desiring expert proof on causation); 24 (admitting that "expert witnesses" are "require[d] by [K]entucky laws governing th[is] type of [a]ction[]"); 36 (admitting that "a [K]entucky medical negligence case" requires "[t]he [o]pinion of an expert"). He, thus, did not "from the outset of [the] case legitimately dispute[] the need for expert testimony." *Blankenship*, 302 S.W.3d at 671. Earle's actions are much more like Collier's in *Blankenship*. *See id.* at 672. Regardless, Earle had six months of discovery and (now) nearly a year since discovery commenced to secure and present expert proof. He has never done so. He now has a period in which he may file objections to this Recommendation.

[13] The Court did not separately set an expert identification deadline, so the Rule 26 default would apply.

submitted an expert report or testimony, as Kentucky law requires (and as the motion practice would dictate). *See Vance by and through Hammons v. United States*, 90 F.3d 1145, 1148-49 (6th Cir. 1996) (stating, "While state substantive law governs the resolution of [Plaintiff]'s claims, federal procedural law governs the manner in which they are resolved on a summary judgment motion" and discussing expert-discovery-based claims).

Under the federal summary judgment rubric, *see id.* at 1148, when the movant does not have the burden at trial (as the United States postures here), it "may satisfy Rule 56's burden of production . . . [by] demonstrat[ing] to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex Corp.*, 106 S. Ct. at 2557 (Brennan, J., dissenting). The United States persuasively did that, for the reasons discussed above. The burden then shifts to the nonmovant (here, Earle) to "call[] the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party." *Id.* Earle did not do that; he points to and places no expert proof in the record and, even in response to a summary judgment motion following months of discovery, has tendered no Baranano affidavit or testimony. As a result, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 2552.

Quite simply, on this record, Earle's lack of expert proof is fatal to his Complaint. The United States is thus entitled to judgment as a matter of law.[14]

---

[14] The Court recommends granting summary judgment under Rule 56, not dismissal under Rule 12(b). Assuming the facts in the complaint are true, as a 12(b) assessment must, Earle facially states a plausible claim for relief. However, on the fully developed record, the claim fails under the summary judgment rubric.

IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the District Court **GRANT** DE #53 to the extent it seeks summary judgment. The United States is entitled to judgment as a matter of law.

\* \* \* \* \*

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. As defined by section 636(b)(1) and Rule 72(b), within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for *de novo* consideration by the District Court. The parties should consult the aforementioned statute and rule for specific appeal rights and mechanics. Failure to object in accordance with Rule 72(b) normally waives a party's right to review. *See Thomas v. Arn*, 106 S. Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 8th day of February, 2016.

Signed By:
Robert E. Wier    REW
United States Magistrate Judge