## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF KENTUCKY
### SOUTHERN DIVISION
### AT LONDON

**CIVIL ACTION NO. 13-184-DLB-REW**

**VERNON NORMAN EARLE**                                          **PLAINTIFF**

**vs.**          **ORDER ADOPTING RECOMMENDED DISPOSITION**

**UNITED STATES OF AMERICA**                                  **DEFENDANT**

**\*\*\*\*\*\*\*\*\*\*\*\*\***

## I.      Introduction

This matter is before the Court on the Recommended Disposition (Doc. # 61) of United States Magistrate Judge Robert E. Wier, wherein he recommends that the Court grant the United States' Motion for Summary Judgment[1] (Doc. # 53) on Vernon Norman Earle's medical negligence claim, brought under the Federal Tort Claims Act ("FTCA"). Specifically, Judge Wier found that the United States is entitled to summary judgment because Earle has not produced any expert testimony to prove the causation element of his claim.  Earle having filed Objections (Doc. # 62) to the Recommended Disposition, and the United States having submitted its Response[2] (Doc. # 64), this matter is now ripe for

---

1) The United States' submission was formally styled as a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. # 53).  Accordingly, Judge Wier "review[ed] the complaint in the context of a motion to dismiss and alternatively for summary judgment."  (Doc. # 61 at 2, n. 3).  Judge Wier also explained that, "[u]nder the standard of a motion to dismiss, the Court construes the complaint in favor of Earle, the non-movant, and assumes the well-pled facts are true."  (*Id.* at 2).  By contrast, "[u]nder the summary judgment standard, the Court assesses the facts in favor of Earle, the non-movant."  (*Id.*).

2) After the United States filed its Response, Earle submitted a Reply (Doc. # 65).  Earle also tendered a Motion for Leave to Supplement the Reply (Doc. # 66) with a letter from Dr. Alberto Martinez, an ophthalmologist.  Dr. Martinez states that he is willing to review Earle's medical records and submit an

the Court's review.  For reasons stated herein, Judge Wier's Recommended Disposition is hereby **adopted in full** as the findings of fact and conclusions of law of the Court.

## II.     Discussion

### A.     Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), a district court judge may refer dispositive matters to a magistrate judge for the preparation of a recommended disposition.  If a party files objections to the recommended disposition, the district court judge must review the contested portions *de novo* and "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72©.  The objections must be specific; "vague, general or conclusory objections . . . [are] tantamount to a complete failure to object."  *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001) (internal quotations omitted).  Moreover, "an 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context."  *VanDiver v. Martin*, 304 F. Supp. 2d 934, 938 (E.D. Mich. 2004).

### B.     The Recommended Disposition

In his Recommended Disposition, Judge Wier began by disentangling the threads of Earle's complaint. (Doc. # 61 at 5-7).  When Earle first initiated this action, he used the *pro se* prisoner form designated for § 1983 or *Bivens* actions.  (Doc. # 1).  Although Earle made a passing reference to the Eighth Amendment and its "deliberate indifference"

_____

affidavit, provided Earle has appointed counsel.  (Doc. # 66-1).

standard, he explicitly characterized his case as an FTCA action and named the United States as Defendant, consistent with FTCA practice.  (*Id.*).  For these reasons, the Court decided to re-classify Earle's complaint as an FTCA action for screening purposes.  (Doc. # 4).  After reviewing the record, Judge Wier concurred with this assessment, stating that "the FTCA supplies Earle's cause of action and dictates the analysis."  (Doc. # 61 at 7).  However, before delving into the FTCA analysis, Judge Wier explained that Earle's claim would fail if it were interpreted as raising an Eighth Amendment issue under *Bivens*.  (*Id.* at 7, n. 5).  Because the United States cannot be liable under *Bivens*, and because it is the sole Defendant in this action, such a claim could not survive.  (*Id.*).

Judge Wier began his FTCA discussion by acknowledging that "the law of tort location governs FTCA liability."  (*Id.* at 8).  In this case, Earle essentially alleges that prison staff at USP McCreary[3] were negligent in providing timely medical care for his detached retina, resulting in surgical complications.  (Doc. # 1).  Because the events at issue happened in Kentucky, Judge Wier determined that Kentucky law would govern Earle's substantive claims.  (Doc. # 61 at 8).  After "scour[ing] the full record and strain[ing] to identify the precise basis for Earle's actual claims," Judge Wier concluded that Earle's complaint "raises medical negligence claims under relevant Kentucky law and cases."  (*Id.*).  He then proceeded to examine these cases in detail.  (*Id.* at 8-10).  Because Judge Wier was quite thorough in his discussion, the Court need only highlight the key legal principles here.

---

3) Earle has since been moved to FCI Hazelton in Bruceton Mills, West Virginia.  (Doc. # 62).

3

Under Kentucky law, common law negligence requires proof of the following elements: (1) a duty owed by the defendant to the plaintiff; (2) breach of that duty; (3) injury to the plaintiff; and (4) legal causation between the defendant's breach and the plaintiff's injury. *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 212 (Ky. 2012). Medical negligence is merely a "branch of the well traveled road of common law negligence." *Grubbs ex rel. Grubbs v. Barbourville Family Health Ctr., P.S.C.*, 120 S.W.3d 682, 693-94 (Ky. 2003). The basic elements are the same. *Id.* However, the applicable standard of care in negligence cases is ordinary care, i.e., such care as a reasonably prudent person would exercise under the circumstances. *Wright*, 381 S.W.3d at 212. In most medical negligence cases, the plaintiff must present expert testimony establishing the standard of skill expected of a reasonably competent medical practitioner. *Id.*; *see also Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. Ct. App. 2006).

"Kentucky law usually requires expert or medical testimony to establish that an incident legally caused a medical injury." *Blair v. GEICO Gen. Ins. Co.*, 917 F. Supp.2d 647, 657 (E.D. Ky. 2013). This is so in both ordinary negligence cases and medical negligence cases. *Id.* (granting summary judgment on the plaintiff's ordinary negligence claim for failure to prove causation via expert testimony); *Andrew*, 203 S.W.3d at 170 (stating that the plaintiff must present expert testimony demonstrating that the alleged medical negligence proximately caused the injury).

There are two limited exceptions to the general rule requiring expert testimony in ordinary negligence and medical negligence cases. *Id.* Both exceptions "involve the application of the *res ipsa loquitur* doctrine and permit the inference of negligence even in the absence of expert testimony." *Id.* at 170-71. The first "involves a situation in which any

layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care." *Id.* This exception is "illustrated by cases where the surgeon leaves a foreign object in the body or removes or injures an inappropriate part of the anatomy." *Id.* The second exception "occurs when medical experts may provide a sufficient foundation for *res ipsa loquitur* on more complex matters." *Id.* "An example of the second exception would be the case in which the defendant doctor makes admissions of a technical character from which one could infer that he or she acted negligently." *Id.*

With these examples in mind, Judge Wier concluded that neither of the exceptions applied to Earle's case. He first reasoned that:

> [l]aypeople certainly are not competent, based on common, everyday experience, to judge relative injury causation or delay effect as to a highly complex area of the body such as a retina. Particular cause(s) of retina injury, or retinal detachment complication, surely may result from *many* factors that laypeople do not know how to accurately weigh or evaluate absent expert testimony on the subject.

(Doc. # 61 at 12) (emphasis in original). He then observed that the second exception is "plainly inapplicable" because "[t]here are no medical experts to provide a foundation for *res ipsa loquitur*, and there are no admissions from involved doctors in the record." (*Id.* at 14). Thus, "Earle's claims fall squarely within the recognized Kentucky scope of cases requiring expert proof." (*Id.* at 11).

That being the case, Judge Wier then proceeded to consider Earle's proof on the issue of causation. (*Id.* at 14-15). The United States maintains that Earle has no such proof, as he did not disclose it during the discovery period. (Doc. # 53). Earle insists that he does have an expert, one Dr. Baranano, who he did not disclose during discovery

because Judge Wier did not set a separate expert disclosure deadline. (Doc. # 57). While Earle is correct in stating that Judge Wier did not set such a deadline, the parties were supposed to complete *all* discovery by September 11, 2015. (Doc. # 20). As Judge Wier noted, "[e]xpert disclosure is typically a part of discovery." (Doc. # 61 at 15). However, "[e]ven if Earle did not have a duty to disclose Dr. Baranano previously (a point not here decided), Earle surely must have shown his cards in the summary judgment briefing." (*Id.*). After all, "the United States decried the lack of proof. To answer, Earle cannot just claim an expert; he must demonstrate the proof from that expert that will bridge the noted gap on causation." (*Id.*). Because Earle failed to do this, Judge Wier recommended that the Court grant summary judgment in the United States' favor. (*Id.* at 17).

### C.   Earle's Objections

The Court has reviewed Earle's Objections (Docs. # 62 and 65) to Judge Wier's Recommended Disposition. Many of them could be overruled in summary fashion, as they merely state a disagreement with Judge Wier's suggested resolution or summarize what has been presented before. *See VanDiver*, 304 F. Supp. 2d at 938. Nevertheless, the Court will briefly discuss all of Earle's Objections out of an abundance of caution. Consistent with his *pro se* status, the Court will be sure to evaluate his arguments under a relatively lenient standard. *See Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings.").

Earle's twelve Objections can be broadly divided into four categories: (1) those taking issue with Judge Wier's construction of the complaint; (2) those contesting Judge Wier's ultimate recommendation; (3) those complaining about Judge Wier's processing of the case; and (4) those claiming that Judge Wier was biased towards the United States.

6

(*Id.*).  The Court will address each category of Objections in turn.

### i.     Judge Wier's Construction of the Complaint

Earle first objects to Judge Wier's construction of the complaint.  (Doc. # 62 at 3).  In essence, it seems that Earle wishes to assert a claim for violation of his Eighth Amendment rights under the FTCA.  He argues that "there is no case law that this plaintiff could find or the defendant nor [*sic*] the magistrate could or [*sic*] have put forth that stated, A plaintiff can not claim constitutional violation in a federal Tort Claims Act, [*sic*] suit."  (*Id.*).

Contrary to Earle's assertion, there is case law to support Judge Wier's interpretation of the complaint.  It is well-established that a *Bivens* action is the proper vehicle for redressing constitutional torts.  *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (creating a private right of action for damages against officials, acting under color of federal law, who allegedly violated a citizen's constitutional rights).  Constitutional torts are *not* actionable under the FTCA.  *See FDIC v. Meyer*, 510 U.S. 471, 487 (1994); *see also Browning v. Pennerton*, 633 F. Supp. 2d 415, 428 (E.D. Ky. 2009) (highlighting the distinction between a *Bivens* action and an FTCA claim).  Because Earle explicitly identified the FTCA as the basis for this action, and because he cannot assert a constitutional tort claim under this statute, Judge Wier endeavored to construe Earle's complaint in a manner consistent with the law.  Specifically, Judge Wier had to consult the law of the tort's location, i.e. Kentucky law, to determine the nature of Earle's substantive claims.  *See* 28 U.S.C. § 1346(b); *Rousey v. United States*, 115 F.3d 394, 96 (6th Cir. 1997) (explaining the situs of the alleged negligence controls the plaintiff's substantive claims under the FTCA).

7

Judge Wier certainly could have disagreed with the Court's initial interpretation of the complaint and recommended that the Court construe it as a *Bivens* claim. However, "[e]ven if the Court interpreted the complaint to raise an Eighth Amendment issue, presumably under *Bivens*, the United States–the only defendant Earle named–cannot be liable under such a claim." *See Corr. Servs. Corp. v. Malesko*, 122 S. Ct. 515, 522 (2001) (stating that a federal prisoner cannot bring a *Bivens* claim against the United States). Because Earle sued only the United States, this construction of the complaint would have been immediately fatal to his case. Thus, the Court finds no error in Judge Wier's decision. Earle's first Objection must be overruled.

In the alternative, Earle objects to Judge Wier's finding that the complaint "raise[s] medical negligence claims under relevant Kentucky law and cases." (Doc. # 61 at 8). According to Earle, Judge Wier "has misconstrue [*sic*] this complaint as one for medical amlpractice [*sic*]." (Doc. # 62 at 2). He further contends that "[m]alpractice and medical neligence [*sic*] is [*sic*] two different thing [*sic*]. [M]alpractice don't [*sic*] carry with it any breach owed, and neligence [*sic*] do [*sic*], also Negligence carry [*sic*] a constitutional Duty to act to provent [*sic*] any breach or adequatecy [*sic*] of care. [T]here for [*sic*] the two can not be said to carrt [*sic*] the same standard." (*Id.* at 4).

This argument is premised on a misunderstanding of Kentucky tort law. To clarify, medical negligence and medical malpractice are interchangeable terms that refer to the same concept. *Blankenship*, 302 S.W.3d at 673. Moreover, medical negligence is nothing more than a subset of common law negligence. *Wright*, 381 S.W.3d at 212. Both require proof of the same fundamental elements–duty, breach, causation and damages. *Grubbs*, 120 S.W.3d at 693-94. The distinction lies in the standard of care. *Andrew*, 203 S.W.3d

8

at 170.  While common law negligence is governed by the standard of ordinary care, medical negligence incorporates the standard of skill expected of a reasonably competent medical practitioner.  *Id.*  Neither imposes a "constitutional duty," as Earle suggests.

Earle insists that he "is not trying to explain a physicions [*sic*] negligence" or "proved [*sic*] a skill set of any practicioner [*sic*]; but to proved [*sic*] the breach of legal statutory procedural mandated requirement, setforth [*sic*] in the handed down policy to the Agency[.]" (*Id.*).  Presumably, he refers to BOP Program Statement P6031.01, which lists "detached retina, sudden loss of vision" under the "Medically Necessary – Acute or Emergent" category of care.  (Doc. # 62 at 4).  However, as Judge Wier noted, this document "does not do the work [Earle] claims."  (Doc. # 61 at 12, n. 9).  It "does not speak to Earle's core tortious allegations" and "does not establish a particular standard of care, breach, causation, or injury."  (*Id.*).  Given the nature of the allegations set forth in the complaint, the Court finds that Judge Wier reasonably read it as raising a medical malpractice claim.  Earle's second and third Objections are therefore overruled.

Earle also complains about his limited ability to respond to Judge Wier's Recommended Disposition, which repeatedly refers to Kentucky state law.  (Doc. # 62 at 2).  Because Earle is now incarcerated at FCI Hazelton in Bruceton Mills, West Virginia, he does not have access to sources of Kentucky law.  (*Id.*).  While the Court is sympathetic to Earle's situation, the FTCA borrows the substantive law of the tort's location.  *See* 28 U.S.C. § 1346(b); *Rousey*, 115 F.3d at 396.  In this case, the tort's location is USP McCreary in Pine Knot, Kentucky.  Even if Judge Wier wished to depart from Kentucky law, in an effort to accommodate Earle, the FTCA precluded him from doing so.  Accordingly, Earle's fourth Objection is overruled.

9

Next, Earle contends that "[t]he magistrate try's to make officer Godberry the main violator in this lawsuit, and that was not the case presented by plaintiff, as stated Earle, on 12/19/2011, notify the medical department that he could not see out of his right eye." (Doc. # 62 at 2). Earle no doubt refers to the eighth footnote of the Recommended Disposition, in which Judge Wier noted that, although Earle chose to file a medical negligence claim under the FTCA, the "context is somewhat awkward here because the target of Earle's dissatisfaction seems to be Officer Godberry, who is allegedly the prison employee who stopped Earle from going to a retina-related appointment in February 2012." (Doc. # 61 at 11, n. 8). He observed that "Godberry . . . is not a doctor and did not provide Earle with medical care." (*Id.*).

While Earle may not have intended to focus on Officer Godberry, his filings contain several references to this individual. Because the allegations implicate Officer Godberry in the denial of medical care, Judge Wier felt it necessary to point out the imperfect fit between Earle's cause of action and the alleged bad actor. At any rate, it did not affect Judge Wier's ultimate recommendation. As he observed, "[e]ven if Earle's theory is not particularly malpractice–rather that Godberry unreasonably interfered with his medical appointment–the claim still would require expert proof of causation" under Kentucky law. (Doc. # 61 at 11, n. 8). After all, "[w]hether the delay exacerbated the problem is not a matter of lay ken." (*Id.*). Earle's fifth Objection therefore fails.

### ii.    Judge Wier's Recommendation

Contrary to Judge Wier's observations, Earle insists that he never conceded the need for expert testimony to prove his claim. (Doc. # 62 at 4-5). He asserts that expert testimony is unnecessary in this case because his claim is subject to the "layman's

10

exception" discussed above. (*Id*.). Earle reasons that "[a] jury/lay-person would and could conclude that anytreatment [*sic*] withheld or delayed to such an injury will cause further damage." (*Id*.).

This argument oversimplifies the issue of causation. The "layman's exception" only applies to those "situation[s] in which any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care[.]" *Andrew*, 203 S.W.3d at 170. Classic examples include the surgeon who leaves a foreign object in the body or removes or injures an inappropriate part of the body. *Id.* Earle's situation is not analogous to either of these examples. As Judge Wier observed:

> [Earle] essentially asserts that preoperative delay resulted in additional injury to his retina or retina-repair complications. Laypeople certainly are not competent, based on common, everyday experience, to judge relative injury causation or delay effect as to a highly complex area of the body such as a retina. Particular cause(s) of retina injury, or retina detachment complication, surely may result from *many* factors that laypeople do not know how to accurately weigh or evaluate absent expert testimony on the subject.

(Doc. # 61 at 11-12). In short, "[d]elay-based allegations (as to alleged harm from interruption of treatment for an already injured eye) are fundamentally different from a surgeon leaving a foreign object in a person or operating on the wrong part of the body[.]" (*Id*.). The Court concurs with this analysis, and must overrule Earle's sixth Objection.

Earle also suggests that Judge Wier misinterpreted the medical records from Drs. Stone and Kitchens. (Doc. # 62 at 5-6). Specifically, Earle argues that these records are sufficient to establish causation:

> The records of this case shows [*sic*] the delay did worsened [*sic*] the detachment, to a point where plaintif [*sic*] could not be improved, the best

11

that could happen was to save the eye, which was palintif [*sic*] main concern after Dr. kitchens; [*sic*] informed him he will never see out the eye again because of the Damage done by the "delay."

(*Id.*).  However, he offers no specific citations to these records that support his thesis.

Judge Wier reviewed these same medical records and drew the exact opposite conclusion:

> The medical records in this case confirm the complexity of the retina proceeding and also reveal a relevant history of cataracts and a family history of glaucoma, diabetes, retinal detachment, and blindness or other eye disease.  DE #42 (Sealed medical records).  The records show a pattern of regular and competent medical care from 2012 to 2014 and that Earle's eye presented a complicated problem.  *Id.*; *e.g., id.* At 7 ("complex retinal detachment").  The records by no means establish that delay worsened the detachment.  *E.g., id.* at 8 (noting "the chronic nature of his macula-off detachment"); *id.* At 10 (post-surgery, "Retinal detachment looks great!"); *id.* at 12 (noting a "history of retinal detachment" and "[r]ecurrent rhegmatogenous retinal detachment").  In September 2014, Dr. Kitchens concluded: "At this point, I think Vernon's retina is stable and it is miraculous he sees as well as he does."  *Id.* at 33.  The records show medical providers diligently addressing Earle's problem over the course of years, but in no way textually link his retina issue with February 2012 preoperative delay.  There is nothing from the records or case that, absent an interpreting and opining expert, establishes the key causation element.

(Doc. # 61 at 13).  The Court, having reviewed these same records, must again concur with Judge Wier's assessment.  Therefore, Earle's seventh Objection is overruled.

In the alternative, Earle claims that he can offer expert testimony from Dr. Baranano to prove causation.  Judge Wier found these mere allegations insufficient to preclude summary judgment.  He reasoned that "Earle cannot just claim an expert; he must demonstrate the proof from that expert that will bridge the noted gap on causation." (*Id.* at 15).  Earle attempted to cure this defect by submitting a letter from Dr. J. Alberto Martinez, a board certified ophthalmologist, stating that he is willing to review the medical records and submit an affidavit.  (Doc. # 66-1).  However, this effort fails for the same reasons explained

above.  In short, this expression of intent to review the records falls far short of bridging the gap on causation.  The Court must overrule Earle's eighth Objection.

Earle attempts to tie the aforementioned arguments together and attack Judge Wier's ultimate conclusion that the United States is entitled to summary judgment.  (Doc. # 62 at 2).  He insists that "[t]he defendant has not demonstrate [*sic*] an absence of a genuine issue of material facts to warrent [*sic*] dismissal or summary judgment in its favor[.]"  (*Id.* at 2-3).  However, because Earle's supporting arguments have been rejected, and because he has not demonstrated the existence of any genuine issues of material fact, his ninth Objection must be overruled.

### iii.    Judge Wier's Processing of the Case

Earle's next set of Objections do not actually relate to the legal analysis set forth in the Recommended Disposition.  Instead, he claims that ancillary issues hampered his ability to survive summary judgment.  (Doc. # 62 at 4).  Chief among these issues is Judge Wier's decision to deny Earle's Motion to Appoint Counsel.  (Doc. # 23).  In that Order, Judge Wier found that Earle was not entitled to counsel because there was nothing "particularly complex" about the case, noting that Earle had demonstrated an ability to represent himself.  (*Id.* at 2-3).  Earle now contends that Judge Wier's assessment was flawed, as the Recommended Disposition repeatedly refers to the complexity of the medical issues involved.  (Doc. # 62 at 4).

Here, Earle overlooks a critical distinction between Judge Wier's prior Order and his Recommended Disposition.  In his Order, Judge Wier found that the case itself was not so

complex as to justify the appointment of counsel.[4]   By contrast, the Recommended Disposition considered whether the medical issues involved were complex enough to necessitate expert testimony on causation.  These are two different inquiries.  While the former focuses on Earle's ability to represent himself, the latter concentrates on the nature of the proof necessary to survive summary judgment.  Although Earle is not trained as a lawyer, he has vigorously litigated this case from the beginning.  Moreover, he has demonstrated a basic ability to understand the Court's Orders and respond to them.  The fact that the case involves medical proof does not necessarily undermine Judge Wier's initial assessment.  After all, most attorneys do not have medical degrees, and Earle simply has not shown that appointed counsel would succeed where he has failed.  Accordingly, his tenth Objection is without merit.

Earle also alleges that the United States failed to abide by the discovery procedures set forth in Federal Rule of Civil Procedure 26 and modified by Judge Wier.[5]  (*Id.* at 6).  Specifically, Earle "did request discovery and disclosures [*sic*], which most [*sic*] was not handed over."  (*Id.*).  The record reflects that Earle filed a Motion for Issuance of Subpoena *Duces Tecum*, in an effort to obtain his medical records from Drs. Stone and Kitchens, on May 19, 2015.  (Doc. # 27).  Judge Wier provided the appropriate forms for Earle and instructed him on their completion.  (Doc. # 30).  He then ordered the United States to file

---

4) Earle filed Objections to this Order (Doc. # 24), which the Court considered and overruled (Doc. # 25).  Thus, this issue has already been considered on multiple occasions.

5) Specifically, Judge Wier simplified the discovery process by setting only two deadlines–one for pretrial discovery and one for dispositive motions.  (Doc. # 20).  This approach was consistent with both the Federal Rules of Civil Procedure and this Court's Local Rules.  *See* Fed. R. Civ. P. 16(b), 26(a)(1)(B)(iv), and 26(f)(1); *see also* Joint Local Rule 16.1(c) for the United States District Courts for the Eastern and Western Districts of Kentucky.

14

a status report indicating whether it had secured the records at issue, and if so, whether it had provided them to Earle.  (*Id.*).  He also ordered the United States to indicate whether it intended to secure deposition proof from either of the doctors, and if so, when it planned to schedule these depositions.  (*Id.*).  The United States responded that it had not independently requested these records from Earle's medical providers, or disclosed them to Earle, because they were already included in his medical file.  (Doc. # 31).  Thus, Earle could "review and/or receive copies of his medical records at the institution where he is currently incarcerated."  (*Id.*).  The United States further stated that it did not intend to elicit deposition proof from Drs. Stone and Kitchens at that time.  (*Id.*).  Thus, the record does not support Earle's assertions of discovery violations.  His eleventh Objection is overruled.

### iv.    Judge Wier's Alleged Bias

Finally, Earle "request[s] this Court reject[ ] this Recommended [*sic*] disposition as unfounded, and lacking the required factual basis upon which to stand.  moreover; its Bias towards this Victim/plaintiff and in favor of a Governmental entity."  (Doc. # 62 at 1).  "Plaintiff is unable to answer to most of the allegations in that report, but makes general Objection to ever [*sic*] and all conclusion made by the magistrate judge." (*Id.*).  He complains that "[t]he magistrate judge, [*sic*] has form [*sic*] his own interpretation od [*sic*] what the facts is." (*Id.* at 3).  Additionally, Earle contends that "[i]n every turn this court, The [*sic*] magistrate has refuse [*sic*] to allow this plaintiff a fair and just oppertunity [*sic*] to prosecute this lawsuit, and has try [*sic*] to facilitate the defendant, United States of America."  (*Id.*).

Earle then offers the following specific examples of Judge Wier's alleged bias: (1) citing to Kentucky state law, which the prisoner cannot access at FCI Hazelton; (2)

15

misconstruing the complaint as one for medical malpractice; (3) casting Officer Godberry as the main target of Earle's complaint; (4) stating that Earle conceded the need for expert testimony; (5) finding that a reasonable prudent person would not know that a delay in treatment worsens a medical condition; (6) stating that Earle made only one offhand reference to deliberate indifference; and (7) rewarding the United States for its failure to abide by the discovery rules.  (Doc. # 62).

These aspects of Judge Wier's Recommended Disposition may be dissatisfying to Earle, but they are not indicative of any improper bias.  As the Court has already explained above, Judge Wier's decision is consistent with the law and supported by the record as a whole. Moreover, the record reflects that Judge Wier did what he could to assist Earle in prosecuting this case without overstepping his role as Judge.  (Docs. # 30, 33 and 41).  His Orders often included instructions on the completion of forms, citations to applicable Federal Rules of Civil Procedure and explanations of basic legal concepts. (*Id.*). Because the record does not support Earle's allegation of bias, his twelfth and final Objection must be overruled.

## III.    Conclusion

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1)      Plaintiff Vernon Norman Earle's Objections (Docs. # 62 and 65) to Magistrate Judge Wier's Recommended Disposition are **overruled**;

(2)      Magistrate Judge Wier's Recommended Disposition (Doc. # 61) is **adopted** as the findings of fact and conclusions of law of the Court;

(3)     The United States' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. # 53) is **granted** to the extent it seeks summary judgment; and

(4)     A separate Judgment shall be entered contemporaneously herewith.

This 11th day of April, 2016.

Signed By:

*David L. Bunning*

**United States District Judge**

K:\DATA\ORDERS\London\2013\13-184 Order Adopting R&R re MSJ.wpd.